# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs July 12, 2011

## ALVIN GREEN v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Shelby County**
**No. 03-08074      J. Robert Carter, Jr., Judge**

---

**No. W2010-01614-CCA-R3-PC  - Filed October 11, 2011**

---

The petitioner, Alvin Green, filed for post-conviction relief from his convictions for aggravated kidnapping and attempted aggravated robbery and resulting effective sentence of forty-six years, contending that he received ineffective assistance of counsel.  The post-conviction court denied the petition, and the petitioner now appeals.  Upon review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which JOSEPH M. TIPTON, P.J., and THOMAS T. WOODALL, J., joined.

Vicki M. Carriker, Memphis, Tennessee, for the appellant, Alvin Green.

Robert E. Cooper, Jr., Attorney General and Reporter; Jeffery D. Zentner, Assistant Attorney General; Amy P. Weirich, District Attorney General; and David Zak, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### I. Factual Background

At trial, Patricia and Marion Gelston testified that the petitioner came to their house under the pretext of inquiring about a car they had for sale.  State v. Alvin Green, No. W2007-00570-CCA-R3-CD, 2008 WL 2115363, at *1 (Tenn. Crim. App. at Jackson, May 19, 2008).  While the petitioner was at the residence, the Gelstons' son, Mark Berretta, came to the house.  Id. at *2.  The petitioner pointed a gun at the Gelstons and Beretta.  Id.  The petitioner apologized for his behavior but said he needed the money.  Id.  The petitioner made Mrs. Gelston walk outside so she could drive her car to the bank to withdraw $7,000 from

the Gelstons' bank account. Id. However, before Mrs. Gelston could leave, a SWAT team apprehended the petitioner outside of the Gelstons' house. Id. A detective testified that after the petitioner was in jail, he overheard a telephone conversation in which the petitioner said he wanted the victims killed and negotiated to have the killings committed for $10,000. Id. In his defense, the petitioner testified that he had been a drug courier for a number of years but that he wanted to stop. Id. at *3. He said his "superiors" told him that he needed to "'buy [his] way out'" of the drug business by making payments of $5,000 to $20,000 per month. Id. When he was unable to make a payment, three individuals, whom he would not identify, told him that his family would be harmed if he did not rob the Gelstons. Id. After hearing the foregoing proof, the jury found the petitioner guilty of three counts of especially aggravated kidnapping and two counts of attempted aggravated robbery, for which he received a total effective sentence of forty-six years. Id. at *1.

Thereafter, the petitioner filed a petition for post-conviction relief. He alleged, in pertinent part, that his trial counsel was ineffective by failing to advise the petitioner that he could receive consecutive sentencing if convicted at trial and for failing to adequately present mitigating evidence at sentencing. He also alleged that counsel "failed to prepare himself and petitioner for the possible admission of evidence of pending solicitation [of murder] charges."

At the post-conviction hearing, the petitioner's trial counsel testified that he was appointed to represent the petitioner in the especially aggravated kidnapping and aggravated robbery case. He also represented the petitioner on a subsequent charge of solicitation to commit murder which was pending at the time of the petitioner's trial. Counsel said that he had ample time to prepare for the petitioner's trial.

Trial counsel said that he received discovery and reviewed it with the petitioner. Counsel stated that during plea negotiations, the State offered a minimum sentence of thirty-one years. The petitioner told counsel that he would consider accepting a twenty-year sentence, but an agreement was never reached and the case proceeded to trial. Trial counsel said that he thoroughly discussed with the petitioner the sentences he was facing for each offense charged in the indictment, including the risk of consecutive sentencing.

Counsel said that the petitioner admitted he committed the offenses but maintained that he acted under duress. Counsel acknowledged that he advised the petitioner that a defense of duress was rarely successful because it was difficult to prove. However, counsel said that it was the only viable defense because the petitioner was "caught on the scene . . . red handed." Counsel had Dr. Angelillo do a mental evaluation of the petitioner to show that the petitioner sought to please others and was easily pressured by others. Counsel said that

the night or the weekend before trial, Dr. Angelillo kind of backed off his statements and felt – and stated that he felt that the defense was not going to be successful and he was very uncomfortable on testifying on that point, so we did not call him in the trial, but he did testify in the sentencing hearing.

Counsel said that Dr. Angelillo's absence left the defense with no medical testimony and no witnesses. Trial counsel recalled that the petitioner never disclosed the identity of the individuals who allegedly forced him to commit the crimes. Additionally, other potential witnesses either did not want to testify or knew nothing that would help the defense. Counsel advised the petitioner that he could subpoena the witnesses, but the petitioner refused. Accordingly, the defense was limited to the petitioner's testimony.

Counsel stated that the petitioner's solicitation to commit murder charges resulted from the petitioner's attempt to have the victims of the kidnapping and robbery offenses killed. Counsel said that he and the petitioner discussed the possibility that the solicitation charge might be admitted, and he kept the petitioner advised of the developments. Counsel filed a motion in limine to prohibit the State from introducing proof of the solicitation during the trial on the kidnapping and robbery charges. Counsel said that the State initially said that it would not be presenting evidence of the solicitation. However, the second morning of trial the State filed a motion to introduce evidence of the solicitation based upon comments trial counsel made during voir dire and opening statement. Counsel objected, but the trial court overruled the objection. Counsel said that he had one night to review the tapes of the petitioner's conversation and develop a strategy to deal with them. Counsel said that he pointed out to the jury that the person speaking with the petitioner raised the issue. Trial counsel raised the issue of the admissibility of the solicitation in the motion for new trial and on appeal.

Counsel said that the petitioner testified regarding his version of the offenses. Petitioner admitted that he had been a drug courier for fourteen years and said that when he tried to stop, his drug bosses threatened him and made him rob the victims to get money. Counsel said the petitioner's version of events failed to explain a twenty-four-hour time "gap," and counsel advised the petitioner that he could be cross-examined about his activities during this time. The petitioner testified that during that time period "he was on the side of the road asleep." Counsel opined that the petitioner's explanation "threw a dent in the imminent threat of a duress defense." Before the petitioner testified, counsel had advised him that the State would be able to cross-examine him and point out problems with his version of events.

Trial counsel said that Dr. Angelillo's main purpose at the sentencing hearing was to

raise the issue of the petitioner's level of culpability. Counsel said that the petitioner was intelligent, had a college education, and had a job involving computers. Trial counsel said that he could not think of anything that he would have done differently in his representation.

The petitioner testified that counsel reviewed discovery with him and that he understood "everything that was going on with the case." The petitioner said that he was evaluated by Dr. Angelillo and was prescribed Seroqil. The petitioner said that around the time of the evaluation, he was charged with solicitation of murder. The petitioner thought the solicitation charge would be tried before the kidnapping and robbery charges.

The petitioner said that he gave counsel the names of witnesses but that the witnesses did not want to testify. The petitioner acknowledged that he and counsel talked about consecutive sentencing prior to trial. The petitioner said that he did not "see any enhancement factors" and that he thought some positive aspects in his life would serve to mitigate his sentence. Therefore, the petitioner believed the longest sentence he would receive was twenty-five years. Accordingly, he refused the State's plea offer of thirty-one years, believing "he had nothing to lose."

The petitioner said that he had a bachelor of science degree in mathematics and a master's degree in computer science. He said that he had a history of employment from 1985 to the time of his arrest that was not adequately reflected on the presentence report. The petitioner acknowledged that he "ran drugs" for fourteen years; however, he said that he also had "real job[s]" during that time and that he did not run drugs "all the time, constantly, like it's being implied." The petitioner said that counsel should have verified his employment. When asked if trial counsel could have done anything differently to obtain a different verdict, the petitioner responded, "[A] different verdict, maybe not, but the sentencing I thought was unreasonable."

The post-conviction court denied the petition, finding that the petitioner failed to establish that his counsel was ineffective. The post-conviction court noted that the petitioner acknowledged that counsel discussed consecutive sentencing with him. Additionally, trial counsel said that he talked with the petitioner about the possibility of receiving consecutive sentencing at trial. Regarding the admission of the solicitation charges, the post-conviction court said that trial counsel filed a motion in limine to keep out evidence of the solicitation and objected to the admission of the evidence at trial. Additionally, counsel raised the issue in the motion for new trial and on direct appeal. The post-conviction court said that counsel was prepared to address the issue at trial. Therefore, the court found that counsel adequately argued against the admission of the solicitation and was prepared to cross-examine the witnesses once the evidence was admitted. The court found that the petitioner was intelligent and, after being informed that counsel filed a motion in limine to keep out evidence of the

solicitation, should have been aware of the risk of the evidence being admitted at trial. Finally, the post-conviction court said that "[a]lthough the Petitioner's presentence report may not have obtained as much depth and investigation into the Petitioner's work history as the Petitioner would have liked, there is no evidence that this lack of depth prejudiced the Petitioner's length of sentence." On appeal, the petitioner challenges the post-conviction court's ruling.

## II. Analysis

To be successful in his claim for post-conviction relief, the petitioner must prove all factual allegations contained in his post-conviction petition by clear and convincing evidence. See Tenn. Code Ann. § 40-30-110(f). "'Clear and convincing evidence means evidence in which there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence.'" State v. Holder, 15 S.W.3d 905, 911 (Tenn. Crim. App. 1999) (quoting Hodges v. S.C. Toof & Co., 833 S.W.2d 896, 901 n.3 (Tenn. 1992)). Issues regarding the credibility of witnesses, the weight and value to be accorded their testimony, and the factual questions raised by the evidence adduced at trial are to be resolved by the post-conviction court as the trier of fact. See Henley v. State, 960 S.W.2d 572, 579 (Tenn. 1997). Therefore, the post-conviction court's findings of fact are entitled to substantial deference on appeal unless the evidence preponderates against those findings. See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001).

A claim of ineffective assistance of counsel is a mixed question of law and fact. See State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999). We will review the post-conviction court's findings of fact de novo with a presumption that those findings are correct. See Fields, 40 S.W.3d at 458. However, we will review the post-conviction court's conclusions of law purely de novo. Id.

When a petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, "the petitioner bears the burden of proving both that counsel's performance was deficient and that the deficiency prejudiced the defense." Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)). To establish deficient performance, the petitioner must show that counsel's performance was below "the range of competence demanded of attorneys in criminal cases." Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). To establish prejudice, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. Moreover,

> [b]ecause a petitioner must establish both prongs of the

test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim. Indeed, a court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component.

Goad, 938 S.W.2d at 370 (citing Strickland, 466 U.S. at 697).

On appeal, the petitioner complains that the post-conviction court should have found that his trial counsel was ineffective by failing to advise the petitioner that he could receive consecutive sentencing if convicted at trial, for failing to prepare for the possibility of the solicitation of murder charges being introduced at trial, and for failing to adequately present mitigating evidence at sentencing.

The post-conviction court correctly noted that the petitioner and trial counsel both testified that they discussed the possibility of consecutive sentencing. The post-conviction court found that the petitioner was adequately advised regarding consecutive sentencing. Additionally, the post-conviction court accredited counsel's testimony that he made every attempt to keep evidence of the solicitation from being introduced during trial, filing a motion in limine, objecting to the evidence at trial, and raising the issue in a motion for new trial and on direct appeal. The post-conviction court said that counsel was prepared to deal with the issue. Finally, the post-conviction court noted that the petitioner acknowledged that he was a drug courier for fourteen years and that his involvement in the drug trade eventually led him to commit the kidnapping and robbery offenses. The post-conviction court stated that, given the lengthy nature of the petitioner's involvement with drugs, any additional evidence regarding the petitioner's legitimate work history would have had no effect on his sentencing. Upon our review of the record, we conclude that the evidence does not preponderate against the post-conviction court's findings.

### III. Conclusion

In sum, we conclude that the petitioner failed to establish that his counsel was ineffective. Therefore, we conclude that the post-conviction court did not err in denying post-conviction relief.

_____
NORMA McGEE OGLE, JUDGE